## ARTHUR FIELD *v.* JAMES M. KEARNS
(14689)

Landau, Schaller and Hennessy, Js.

---

Argued March 22—officially released September 24, 1996

*Michael W. Lyons*, with whom, on the brief, was *Arthur M. Field*, for the appellant (plaintiff).

*Julie Harris*, for the appellee (defendant).

*Martin B. Margulies* and *Martha Stone* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

LANDAU, J. This is an appeal by the plaintiff, Arthur Field, from the judgment of the trial court granting the motion by the defendant, James M. Kearns, for summary judgment as to all counts of a seven count complaint and denying the plaintiff's cross motion for partial summary judgment.

On appeal, the plaintiff claims that the trial court improperly determined that (1) bar grievants are entitled to absolute immunity from claims of abuse of process and vexatious litigation as alleged in the first, second, and third counts of the complaint, (2) the defendant was entitled to judgment on the fourth and

seventh counts of the complaint because he owed no duty to the plaintiff under negligence law and under the provisions of the Connecticut Unfair Trade Practice Act (CUTPA), General Statutes § 42-110a et seq., and (3) the defendant was entitled to judgment on the fifth and sixth counts involving publication of a earlier complaint filed by the defendant. We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiff is an attorney who represented Wendy Wirtz in 1989 in a closing on the purchase of a house. In 1991, Wirtz became involved in a foreclosure action involving the same real estate. In February, 1992, Wirtz retained the defendant, also an attorney, to represent her in a malpractice lawsuit against the plaintiff. On February 4, 1992, the defendant requested from the plaintiff, in writing, that the plaintiff notify his professional malpractice insurance carrier of the lawsuit. Thereafter, a correspondence ensued between the two attorneys that could most charitably be described as unpleasant. The plaintiff declined to notify his insurance carrier and refused to furnish any information regarding his malpractice carrier.

In addition to the malpractice lawsuit, the defendant, on April 27, 1992, also filed a complaint against the plaintiff with the statewide grievance committee (committee) alleging that the plaintiff obstructed the judicial process by failing to appear in the lawsuit and by failing to confirm that his malpractice carrier had been notified of the existence of the claim. The plaintiff responded to the subsequent inquiry of the local panel of the committee by furnishing a copy of the declarations page of his professional liability policy.[1] On June 17, 1992, the

[1] On June 1, 1992, the defendant withdrew the first civil action because of a defect in the service of process, and reinstituted the same claims in a new lawsuit including new service of process with a return date of June 23, 1992.

defendant sent a copy of the complaint in the new civil action to the insurance carrier's claims department.[2]

In an amended complaint filed February 3, 1993, the plaintiff instituted the underlying action that culminated in this appeal. In the complaint, the plaintiff alleges that the filing and pursuit of the grievance by the defendant constituted an abuse of process (count one); that the failure of the defendant to withdraw the grievance after the first lawsuit was withdrawn was also an abuse of process (count two); that the defendant's filing of, pursuit of, and failure to withdraw the grievance constituted vexatious litigation (count three); that the preparation and pursuit of the pending lawsuit filed on behalf of Wirtz constituted negligence on the part of the defendant (count four); that, by mailing copies of the civil and grievance complaints against the plaintiff to the plaintiff's malpractice insurance carrier, the defendant tortiously interfered with the plaintiff's business relationship with the carrier (count five); that the publishing of the civil and grievance complaints constituted libel (count six); and that the defendant's actions violated the provisions of CUTPA (count seven).

After unsuccessfully moving to strike all counts of the complaint, the defendant filed an answer denying the allegations in the complaint and asserting three special defenses in which he claimed that he (1) "has an absolute privilege against any liability arising out [of his] complaint . . . [filed] with the [committee]," (2) has "absolute immunity against liability arising out [of his] complaint . . . [filed] with the [committee] and for representations made in the course of judicial proceedings" and (3) "has a conditional privilege as to

---

[2] On June 29, 1992, the local panel of the committee found probable cause that the plaintiff had violated several of the Rules of Professional Conduct. A hearing was held before a reviewing panel of the committee on October 8, 1992. On January 21, 1993, the committee found that the plaintiff's conduct did not rise to the level of an ethical violation and dismissed the complaint.

matters set forth in the complaint." The defendant filed a motion for summary judgment and the plaintiff filed an objection. The plaintiff also filed a motion for summary judgment as to liability.[3]

The trial court granted the defendant's motion for summary judgment and denied the plaintiff's motion for partial summary judgment. The court determined that "the public policy of protecting the courts and the public from unethical and unprofessional attorneys is so strong that there is absolute immunity for the complainant in filing or otherwise causing the institution of attorney disciplinary proceedings." Having found that the theory of absolute immunity applies to the defendant, the court ruled that the defendant was entitled to summary judgment on the first, second and third counts of the amended complaint. The court further opined that the "content of statements in civil actions is likewise privileged," and granted summary judgment "as a matter of law" as to the sixth count. As to the fourth and seventh counts, because the plaintiff "failed to allege, let alone prove by any competent evidence . . . that [the defendant] owed any duty to [him]," the court ruled that those counts also had to fall casualty to the motion for summary judgment. Last, as to the fifth count, the court ruled that summary judgment was appropriate because the plaintiff produced no evidence of "any harm to his business relationship with his carrier or anyone else as a result of [the defendant's] actions." This appeal follows.

"The standards governing our review of a trial court's decision on a motion for summary judgment are clear. Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no

[3] Briefs were filed by the Connecticut Civil Liberties Union Foundation, as amicus curiae, in the trial court and in the Appellate Court.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates*, 219 Conn. 772, 780–81, 595 A.2d 334 (1991); *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 650, 594 A.2d 952 (1991); *Trotta* v. *Branford*, 26 Conn. App. 407, 409, 601 A.2d 1036 (1992). While the burden of showing the nonexistence of any material fact is on the party seeking summary judgment; see *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . *Bassin* v. *Stamford*, 26 Conn. App. 534, 537, 602 A.2d 1044 (1992). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. . . . *Trotta* v. *Branford*, supra, 410." (Internal quotation marks omitted.) *Cortes* v. *Cotton*, 31 Conn. App. 569, 572–73, 626 A.2d 1306 (1993).

"Equally well settled is that the trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citations omitted; internal quotation marks omitted.) *Fleet Bank, N.A.* v. *Galluzzo*, 33 Conn. App. 662, 666, 637 A.2d 803, cert. denied, 229 Conn. 910, 642 A.2d 1206 (1994).

I

The plaintiff first claims that the trial court improperly determined that bar grievants are entitled to absolute immunity for the content of statements made during a judicial or quasi-judicial proceeding. The issue

of whether bar grievants are entitled to absolute immunity for statements made to the committee, pursuant to the teachings of *Petyan* v. *Ellis*, 200 Conn. 243, 510 A.2d 1337 (1986), and its progeny, is a question of first impression in Connecticut. We conclude that absolute immunity does exist.

A

In Connecticut, parties to or witnesses before judicial or quasi-judicial proceedings are entitled to absolute immunity for the content of statements made therein. Id., 245–46. "The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. . . . It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character. [W.] Prosser & [W.] Keeton, Torts (5th Ed. [1984]) § 114, pp. 818–19." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, supra, 200 Conn. 246.

The function of the committee in conducting investigations into alleged attorney misconduct has been labeled sui generis—neither civil or criminal. *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238, 558 A.2d 986 (1989). As a result, the bar grievance process is not correctly labeled a judicial proceeding.[4] In determining whether a proceeding is quasi-judicial,

---

[1] In *Chester* v. *Willey*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 374862 (June 11, 1991) (4 Conn. L. Rptr. 161) (*M. Hennessey, J.*), the trial court addressed this issue. While the trial court correctly concluded that absolute immunity does exist for bar grievants in cases involving defamation claims, the trial court reasoned that grievance proceedings are judicial proceedings. For the reasons set forth previously, we conclude that grievance proceedings are more appropriately classified as quasi-judicial.

however, our review is not limited to the label of the proceeding, but includes a review of the proceeding itself. The principal factors to be considered "are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." *Kelley* v. *Bonney*, 221 Conn. 549, 567, 606 A.2d 693 (1992); see also *Magnan* v. *Anaconda Industries, Inc.*, 37 Conn. Sup. 38, 43, 429 A.2d 492 (1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984). Further, quasi-judicial is defined as "the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." Black's Law Dictionary (6th Ed. 1990).

In a grievance proceeding, following the filing of a complaint against an attorney with the statewide bar counsel and its referral to a local panel, the grievance panel must follow the procedures set forth in General Statutes § 51-90e et seq. and Practice Book § 27F et seq. The grievance panel shall investigate the complaint and determine whether probable cause exists that the attorney is guilty of misconduct. General Statutes § 51-90f (a); Practice Book § 27F (d). Within ninety days, the grievance panel shall file its written findings and recommendation with the committee. General Statutes § 51-90f (c); Practice Book § 27F (g). Following receipt of the grievance panel's recommendation, the committee has the power to assign the case to a reviewing committee, to compel testimony and the production of evidence by use of its subpoena power, to hold hearings at which the complainant and respondent shall have the right to

be heard and, ultimately, to recommend dismissal of the complaint, to impose sanctions; see Practice Book § 27M.1; or to order the presentment of the respondent to the Superior Court. See General Statutes § 51-90g; Practice Book § 27J (a) through (d).

These rules clearly demonstrate that the committee has significant authority to conduct proceedings of a quasi-judicial nature. See *Kelley* v. *Bonney,* supra, 221 Conn. 567. Therefore, we conclude that bar grievance proceedings are quasi-judicial. As a result, absolute immunity for the content of statements made during a quasi-judicial proceeding, as established in *Petyan,* applies to bar grievance proceedings.

## B

Because we conclude that bar grievants are absolutely immune from liability for the content of any relevant statements made during a bar grievance proceeding, we must next consider whether that absolute immunity should be extended to encompass the actual filing of the grievance complaint. The issue of whether bar grievants should be granted absolute immunity for the act of filing a grievance is again an issue of first impression in Connecticut. We conclude that bar grievants are absolutely immune for the act of filing a grievance complaint.

The plaintiff cites *Blakeslee & Sons* v. *Carroll,* 64 Conn. 223, 235, 29 A. 473 (1894), for the proposition that "absolute immunity is not favored" and argues that only a conditional privilege should exist wherein the privilege could be lost if action is taken with malice, improper motive, or bad faith. See *Miles* v. *Perry,* 11 Conn. App. 584, 594, 529 A.2d 199 (1987). The defendant and the amicus both argue that, based on the present trend of other states in adopting absolute immunity for the act of filing a grievance and the prevailing public policy, we should provide absolute immunity for bar

grievants for the filing of a grievance complaint. We address these arguments in turn.

While this is an issue of first impression in Connecticut, numerous other jurisdictions have cloaked bar grievants with absolute immunity for the filing of a grievance. In *R. L. Netterville* v. *Lear Siegler, Inc.*, 397 So. 2d 1109, 1113 (Miss. 1981), the Mississippi Supreme Court held that any person who files a complaint in accordance with the Mississippi disciplinary statutes and rules is accorded absolute privilege and no lawsuit predicated thereon may be instituted. The *R. L. Netterville* court reasoned that "[t]he courts can be fully effective in serving the public only if the people see them as a symbol of impartial judgment." Id., 1112.

In *Kerpelman* v. *Bricker*, 23 Md. App. 628, 634, 329 A.2d 423 (1974), the Maryland Court of Appeals held that a lawyer who files a grievance against another lawyer is protected by an absolute privilege, which is not dependent on the existence or nonexistence of malice. In *Drummond* v. *Stahl*, 127 Ariz. 122, 618 P.2d 616 (App. 1980), the Arizona Appellate Court held that there is an absolute privilege for anyone who files a complaint with the state bar alleging unethical conduct by an attorney.[5]

The important public policy involved is to protect the integrity of the court. To preserve this integrity, "a comprehensive disciplinary scheme has been established to safeguard the administration of justice, and designed to preserve public confidence in the system and to protect the public and the court from unfit practitioners. *In re Durant*, [80 Conn. 140, 147–48, 67 A.

---

[5] See also *Stone* v. *Rosen*, 348 So. 2d 387 (Fla. App. 1977); *Hearing on Immunity for Ethics Complaints*, 96 N.J. 669, 477 A.2d 339 (1984); *Capoccia* v. *Couch*, 134 App. Div. 2d 806, 522 N.Y.S.2d 261 (1987); but cf. *Goldstein* v. *Serio*, 496 So. 2d 412 (La. App. 1986) (holding absolute privilege not affirmative defense to claims of abuse of process and malicious prosecution).

497 (1907)]." *Massameno* v. *Statewide Grievance Committee,* 234 Conn. 539, 554, 663 A.2d 317 (1995). The Rules of Professional Conduct and the investigative and enforcement procedures set forth in General Statutes § 51-90g et seq. and Practice Book § 27F et seq. " 'authorize the grievance committee to act as an arm of the court in fulfilling this responsibility.' *Statewide Grievance Committee* v. *Rozbicki,* [supra, 211 Conn. 239]." *Massameno* v. *Statewide Grievance Committee,* supra, 554. When a court disciplines an attorney, "it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. . . ." (Citations omitted; internal quotation marks omitted.) Id., 555.

If unsuccessful bar grievants were subject to retaliatory lawsuits it would have a "chilling effect" on the public. *Capoccia* v. *Couch,* 134 App. Div. 2d 806, 807–808, 522 N.Y.S.2d 261 (1987). The court in *R. L. Netterville* v. *Lear Siegler, Inc.,* supra, 397 So. 2d 1113, reasoned that "[s]uch a [bar grievance] complaint must be privileged, or one who felt aggrieved by his lawyer would hesitate to complain for fear that he might face a damage suit if he failed to prove his complaint. Such a fear, whether it was groundless or not, would reduce the bar's effectiveness in policing its own ranks." A rule establishing absolute immunity for bar grievants protects the public confidence and the integrity of our judicial system. See *Hearing on Immunity for Ethics Complaints,* 96 N.J. 669, 679, 477 A.2d 339 (1984).

In addition, the amicus argues that the plaintiff, by filing a suit alleging vexatious litigation and abuse of process against the defendant, was effectively utilizing what has become known as a "strategic lawsuit against public participation" or SLAPP suit. See G. Pring & P.

Canan, "Strategic Lawsuits Against Public Participation ('SLAPPs'): An Introduction for Bench, Bar and Bystanders," 12 U. Bridgeport L. Rev. 937 (1992). The distinctive elements of a SLAPP suit are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. Id., 946–47. The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of "chilling" any such action. See M. Margulies, "Is It A SLAPP Suit? Or, May Connecticut Lawyers Sue Bar Grievants For Vexatious Litigation?" 12 U. Bridgeport L. Rev. 963 (1992). We find the analogy and arguments in support presented by the amicus to be persuasive. While we do not decide today whether the plaintiff's actions constituted a SLAPP suit, we agree that if bar grievants were not absolutely immune from liability for the act of filing a grievance that it would have a chilling result.

It has been argued that the potential harm to an attorney's reputation and career from groundless complaints is great, that lawyers should not be deprived of their right to legal process, and that the result of providing absolute immunity to bar grievants would be an abuse of attorney grievance procedures. Our response to these arguments is that any such concerns are outweighed by the importance of public confidence in the supervision of attorney conduct. While our decision in this case may place a burden on the legal profession, "the proper administration of justice requires that there be a forum where a layman may have his complaint heard, investigated, and, if necessary, judicially determined." *R. L. Netterville* v. *Lear Siegler, Inc.*, supra, 397 So. 2d 1113. "We should not tolerate the possibility within our disciplinary system that a potential ethics complainant may be intimidated by an attorney into not filing a complaint. The need for public confidence in the integrity of that system is much too important."

*Hearing on Immunity for Ethics Complaints*, supra, 96 N.J. 676.

The potential harm suffered by lawyers in our state as a result of our decision today is minimized by a number of rules of practice. Practice Book § 27F (e) provides for confidentiality for the investigations and proceedings of the grievance panel prior to a finding of probable cause. Practice Book § 27F (a) (2) provides for summary dismissal of complaints that, inter alia, lack sufficient specificity, are duplicative, are stale, or are outside the scope of the rules of professional conduct.[6]

In its decision granting summary judgment on the first three counts of the complaint, which included abuse of process and vexatious litigation, the trial court correctly opined "[t]hat the public policy of protecting the courts and the public from unethical and unprofessional attorneys is so strong that there is absolute immunity for the complainant in filing or otherwise causing the institution of attorney disciplinary proceedings."[7]

---

[6] Attorneys who are subjected to multiple groundless grievances may seek an injunction or a bill of peace; (a bill filed to procure repose from repeated litigation and one of the earliest instances in which chancery courts entertained jurisdiction on the ground of preventing a multiplicity of suits; see 19 Am. Jur., Equity § 81); to enjoin the party from filing further complaints. *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984). If the grievant is a fellow attorney, as in this case, the grievant is subject to discipline from the bar.

[7] The plaintiff relies on *DeLaurentis* v. *New Haven*, 220 Conn. 225, 597 A.2d 807 (1991), to support his argument that persons who file unsuccessful grievances may be sued for vexatious litigation. We find *DeLaurentis* distinguishable. In *DeLaurentis*, the former commissioner of the New Haven parking authority commission brought suit against the city of New Haven and its then mayor alleging that the mayor improperly instituted removal proceedings against him. The city charter provided that the mayor had the power to appoint and discharge the commissioners. Under the charter, the mayor had the power to initiate removal proceedings, appoint an arbitrator, and in the event that the mayor disagreed with the arbitrator's findings, the mayor could disregard the arbitrator's findings and proceed with the removal proceedings.

The *DeLaurentis* court applied a two part analysis to determine whether the mayor was entitled to prosecutorial immunity against the plaintiff's

## II

The plaintiff next claims that the trial court improperly determined that the defendant was entitled to judgment on the fourth and seventh counts of the complaint when it ruled that he owed no duty to the plaintiff under negligence law and under CUTPA.

### A

In the fourth count of his amended complaint, the plaintiff alleges that he is entitled to damages in that "Kearns negligently failed to research the facts underlying the [Wirtz] complaint, negligently failed to investigate the matter . . . [and] [n]egligently prepared the [Wirtz] complaint." The question of whether a duty exists is one of law for the court. *Shore* v. *Stonington*, 187 Conn. 147, 151, 444 A.2d 1379 (1982). Only if a duty is found to exist does the trier of fact determine whether the defendant violated that duty in the particular instance.

Nothing in the plaintiff's complaint or brief takes this case beyond the applicability of the rule established in *Krawczyk* v. *Stingle*, 208 Conn. 239, 244, 543 A.2d 733 (1988), where the court held that "attorneys are not liable to persons other than their clients for the negligent rendering of services." This rule has been fashioned as a matter of public policy. Id., 245. The obligation of an attorney to focus her " '[e]ntire devotion to the interest of the client'; G. Sharswood, An

---

subsequent vexatious litigation suit. The test required, first, a showing of need for the immunity and, second, the presence of adequate safeguards against prosecutorial abuse. Id., 245. In *DeLaurentis*, the court held that the mayor was not entitled to immunity because no adequate safeguards existed against prosecutorial abuse. Id., 248.

We limit our review of *DeLaurentis* to the purpose of distinguishing it from the present case. Because bar grievance proceedings possess adequate safeguards against abuse not present in the New Haven city charter at issue in *DeLaurentis*, we find the two proceedings distinguishable. See General Statutes § 51-90e et seq. and Practice Book § 27B et seq.

Essay on Professional Ethics (5th Ed. 1896) p. 78; see also Rules of Professional Conduct 1.7; and *Mozzochi* v. *Beck*, 204 Conn. 490, 497, 529 A.2d 171 (1987)"; *Krawczyk* v. *Stingle*, supra, 246; would be seriously undermined were the rule different. Because the defendant owes no duty to the plaintiff, his cause of action must fail.

### B

The allegations in the seventh count in the plaintiff's amended complaint sound in a claim under CUTPA. For the same public policy reasons set forth in *Krawczyk*, our Supreme Court has also held that attorneys cannot be liable to their clients' adversaries for alleged unfair trade practices occurring in the course of the attorneys' representation of a client. " 'Determining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy.' *Krawczyk* v. *Stingle*, [supra, 208 Conn. 245] citing 3 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 18.6, p. 730. Providing a private cause of action under CUTPA to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf." *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 727, 627 A.2d 374 (1993).[8] Thus, we conclude that the trial court properly granted summary judgment in favor of the defendant on the seventh count.

### III

The plaintiff's third claim is that the trial court improperly determined that the defendant was entitled

---

[8] To the extent the seventh count encompasses the conduct of the defendant in filing the grievance, as opposed to prosecuting the Wirtz lawsuit, we have determined that the defendant is entitled to immunity for these actions and they cannot, therefore, form the basis for a CUTPA claim.

to judgment on the fifth and sixth counts of the complaint. The plaintiff alleges in the fifth count that the mailing of the Wirtz complaint and the grievance to the plaintiff's insurance carrier constitutes tortious interference with the plaintiff's business relationship with his insurance carrier. In the sixth count, the plaintiff alleges that the same conduct constitutes libel. The ruling of the trial court as to the sixth count is controlled by *Petyan* v. *Ellis*, supra, 200 Conn. 243, in that the defendant is clothed with absolute immunity for the content of statements made in the context of judicial and quasi-judicial proceedings. The court's ruling, therefore, was proper.

The plaintiff's brief does not address the propriety of the trial court's ruling granting summary judgment in favor of the defendant on the fifth count. As the issue was not briefed, it will be deemed abandoned. *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991).[9]

Finally, the plaintiff asserts he was entitled to partial summary judgment on the abuse of process and vexatious litigation counts of his complaint. This claim must fail as a result of our conclusion in part I B that bar grievants are absolutely immune for the act of filing a grievance complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] In a single paragraph at the conclusion of his brief, the plaintiff claims that the trial court's decision violates the equal protection clauses of "the State [and] U.S. Constitutions" and includes his "First Amendment right to institute lawsuits." These bare-bone assertions are made without any citation to legal authority. Moreover, they were not raised before the trial court. We will not reverse the judgment of the trial court on the basis of challenges to its rulings that have not been adequately briefed. Practice Book § 4065; *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, supra, 218 Conn. 300.