Theodore FINK, Plaintiff,

v.

Joan Ann MAGNER, Bernard Green, Green & Gross, P.C. Maureen Gianni, Defendants.

No. Civ.3:93CV01240 WIG.

United States District Court, D. Connecticut.

Nov. 20, 1997.

Warren Miller, New London, CT, for Theodore Fink.

Alan G. Schwartz, Jeffrey Babbin of Wiggen & Dana, New Haven, CT, for Joan Ann Magner.

David P. Burke, Cecilia J. Buck of Cramer & Anderson, New Milford, CT, for Maureen Gianni.

### RULING ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

GARFINKEL, United States Magistrate Judge.

Plaintiff, Dr. Theodore Fink ("Fink"), brings this diversity action against, among others, his ex-wife Maureen Gianni ("Gianni") alleging one count of aiding and abetting against Gianni.

Presently pending is Gianni's Motion for Summary Judgment (Doc. # 191). The issues presented in Gianni's Motion for Summary Judgment are: 1) whether there is legal viability to the claim of aiding and abetting; and, if so, 2) whether Gianni is entitled to absolute immunity for statements made to Magner. For reasons hereinafter set forth, the Court concludes that both issues, independently, warrant the granting of Gianni's Motion for Summary Judgment. There is no legal viability to Fink's claim against Gianni, and Gianni is entitled to absolute immunity for statements made to Magner.

## I. FACTS

An examination of the Amended Complaint and accompanying affidavits and exhibits discloses the following undisputed material facts. Fink is a licensed physician in the States of Connecticut, New York, Pennsylvania and a resident of the State of New York. Gianni is a resident of Connecticut.

Fink and Dr. Robert Golenbock ("Golenbock") were 50% shareholders of the professional corporation Fink–Golenbock, M.D., P.C. ("Fink–Golenbock") which effectively ceased operations in 1987. Prior to its demise, Dr. Joan Ann Magner ("Magner") was an employee of the corporation.

In 1987, Gianni informed Magner of possible instances of sexual abuse involving Fink and her children.[1] Magner, who was the children's pediatrician, subsequently interviewed the children and based on this information, as well as other information, filed a "petition" on July 29, 1987, with the Connecticut Department of Medical Quality Assurance ("DMQA"). (Exhibit 2.)[2] The petition alleged, among other things, Fink's possible sexual abuse of his adopted children. (Id.) Based on this information, DMQA assigned an investigator to explore the claims. After a lengthy investigation, DMQA notified Fink that it was issuing a seven-count "Statement of Charges." DMQA ultimately dismissed the charges against Fink in 1990.

After Magner filed the petition, Fink–Golenbock effectively ceased operations and several legal actions followed. In 1989, Fink brought an arbitration action against Magner alleging, among other things, breach of contract and breach of covenant not to compete. (Exhibit 8.) During the arbitration hearing Fink claimed that Magner had usurped his medical practice. (Exhibit 9; Exhibit 10.) The arbitration panel rejected these claims and decided for Magner on February 12, 1990. (Exhibit 12.)

In 1989, Fink initiated a derivative action in Connecticut Superior Court on behalf of Fink–Golenbock, claiming, among other things, that Magner had misappropriated for herself Fink–Golenbock's assets and economic opportunities. Fink further alleged that Magner (and Golenbock) prevented Fink from entering the corporation's premises (Decl. of Jeffrey Babbin in Supp. of Magner's June 26, 1996 Mot. for Sum. J., Ex. A at ¶ 13), and sought to prevent Fink from practicing medicine through acts that were offensive and unlawful (Id. at ¶ 33).

In March, 1995, the trial in Fink's state court derivative action concluded. The jury rendered a verdict against Magner for conversion, tortious interference, and unjust enrichment. On July 17, 1996, the Connecticut Supreme Court reversed the judgment against Magner on the basis of res judicata. The Connecticut Supreme Court stated that Fink had previously litigated these same claims to judgment against Magner in the earlier arbitration proceeding. See Fink v. Golenbock, 238 Conn. 183, 198–207, 680 A.2d 1243 (1996).

In 1990, Fink began the instant federal court action on behalf of himself which, for the first time, included Gianni as a defendant. In the instant action, Fink maintains that Gianni, without probable cause and with malice, supplied information to Magner which aided and abetted her in filing a false complaint and a vexatious suit. (Am Compl., Count Five ¶¶ 18–22.)

---

1. Gianni's children were from a previous marriage and Fink had adopted them.

2. Exhibits, unless otherwise noted, are those attached in support Magner's July 11, 1994 Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P.Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." Rule 56(c); *See Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir. 1993) (citations omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (1992) (internal quotation marks and citations omitted). The burden of showing that no genuine dispute about any material fact exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In assessing the record to determine whether a genuine dispute as to a material fact exists, the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.) (1991) (citations omitted).

## III. DISCUSSION

### A. Aiding and Abetting Claim—Necessity of a Valid Underlying Cause of Action

Connecticut courts have long recognized a civil cause of action for aiding and abetting. *See Carney v. DeWees,* 136 Conn. 256, 262, 70 A.2d 142 (1949). The elements of aiding and abetting include the following: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch,* 705 F.2d 472, 477 (D.C.Cir., 1983). In order to even consider a cause of action for aiding and abetting, the Court must first weigh whether there is any underlying "illegal or tortious activity." A civil action of aiding and abetting cannot stand alone and depends upon the existence of a valid underlying cause of action. *See Marshak v. Marshak,* 226 Conn. 652, 668, 628 A.2d 964 (1993); *See also, Meehan v. Yale New Haven Hospital,* 1996 WL 168055, *5 (Conn.Super.1996). Therefore, Fink's claim of aiding and abetting against Gianni depends upon the viability of Fink's underlying claim for vexatious litigation against Magner.

The Court has dismissed the vexatious litigation claim against Magner based on the doctrine of res judicata. Alternatively in that decision, the Court dismissed Fink's action based on the lack of the legal viability of the claims (one of which was the vexatious litigation claim). The elements of vexatious litigation require Fink to prove that: (1) Magner initiated or procured the institution of proceedings against the plaintiff, (2) the proceedings terminated in favor of the plaintiff, (3) the defendant acted without probable cause, and (4) the defendant acted with malice. *See McHale v. W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815 (1982) (citations omitted).

Considering only the third element, that of lack of probable cause, this Court concluded that there can be no viable suit for vexatious

litigation against Magner. In this case, any proof that Magner acted without probable cause is unavailing because it is not Magner's responsibility to determine whether there was probable cause for the allegations involving Fink's possible sexual abuse of Gianni's children.

Physicians are required to file a petition when they have "any information which appears to show that a physician is or may be unable to practice medicine with a reasonable skill or safety for any of the reasons listed in section 20–13c." [3] Conn.Gen.Stat. § 20–13d(a). The petition is to be filed with DMQA. DMQA investigates petitions "to determine if *probable cause* exists to issue a statement of charges and to institute proceedings against the physician." Conn.Gen.Stat. § 20–13e(a) (emphasis added).

Magner, as a physician, had a duty to report "any information which appear[ed] to show" that Fink was or may have been unable to practice medicine. Gianni told Magner of Fink's possible sexual abuse of Gianni's children. This encompasses information which relates to Fink's ability to practice medicine. It was not within Magner's discretion to determine whether there was probable cause or even if the allegations were founded or unfounded. In fact, a failure to report "any information" subjected Magner to suspension or revocation of her own license to practice medicine by violating Conn. Gen.Stat. § 20–13d. *See* Conn.Gen.Stat. § 20–13c(7). The DMQA had responsibility for investigating the allegations and determining probable cause.

Thus, as the Court found in its decision regarding Magner's Motion for Summary Judgment, there can be no claim against Magner for vexatious litigation. Fink cannot prove the elements of vexatious litigation because, even if Fink offers proof that Magner acted without probable cause, it would be ineffectual. It was not Magner's responsibility to determine probable cause. In fact, it was Magner's obligation to report "any information which appear[ed] to show" lack of fitness to practice medicine. Without the

underlying cause of action of vexatious litigation, the aiding and abetting claim against Gianni fails. *See Marshak*, 226 Conn. at 668, 628 A.2d 964.

### B. *Immunity*

Alternatively, this Court grants Gianni's Motion for Summary Judgment based on Gianni's immunity from suit for raising an issue regarding Fink's fitness to practice medicine. If Gianni was subject to a civil suit based upon complaints made to her children's physician regarding another physician's lack of fitness to practice medicine, it would have a "chilling effect" on complaints for fear of civil suit liability. *See Field v. Kearns*, 43 Conn.App. 265, 682 A.2d 148 (1996). In *Field*, the Appellate Court of Connecticut granted absolute immunity from vexatious litigation for complaints made in a quasi judicial proceeding about an individual's fitness to practice law. The court held that "if unsuccessful bar grievants were subject to retaliatory lawsuits it would have a 'chilling effect' on the public." *Id.* at 275, 682 A.2d 148.

Fink initially attempts to distinguish *Field* by claiming that a comparison cannot or should not be made between the legal profession and medical profession in terms of fitness to practice. That argument is unavailing. The public depends upon both the medical and legal professions for a high degree of competence, and maintaining the integrity of both professions is essential.

Next, Fink claims that the reasoning in *Field* cannot apply to Gianni because her statements were not made in the context of a quasi-judicial hearing. The court stated in *Field* that "determining whether a proceeding is quasi-judicial ... is not limited to the label of the proceeding, but includes a review of the proceeding itself." *Field*, 43 Conn. App. at 270, 682 A.2d 148. The principal factors "are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judg-

---

**3.** Conn.Gen.Stat. § 20–13c includes, among others, the following grounds for restriction, suspension or revocation of a physician's right to prac- tice: "illegal, incompetent or negligent conduct in the practice of medicine."

ments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." *Id.* Under this standard, a DMQA determination is quasi-judicial in that DMQA has the power to investigate allegations, determine whether there is probable cause and to conduct a formal hearing, if necessary, to decide what action, if any, need be taken.

Although Gianni did not file the petition against Fink, or make any statements directly to DMQA, it was her actions which, in part, led to DMQA's quasi-judicial consideration of probable cause of Fink's alleged misconduct.[4] Gianni, notified Magner of the possible sexual abuse of her children by Fink. Magner, based on this information and subsequent interviews with the children, filed a petition pursuant to Conn.Gen.Stat. § 20–13d(a). Although Gianni is not required by state law to file a petition or to report such alleged illegal conduct on the part of doctors, extending the rational of *Field* to Gianni is a logical result. In *Field*, the court stated that important policy concerns such as "protecting the integrity of the court [and] protecting the public and the court from unfit practitioners" necessitated absolute immunity for comments made in a grievance procedure and in the filing of a grievance complaint. *Field*, 43 Conn.App. at 274, 682 A.2d 148. The same policy reasons apply to Gianni's statements to her children's doctor in this case.

It is logical for a parent to tell her children's doctor of the possible misconduct of another doctor affecting the children. A general member of the public would not necessarily know where or how to report possible medical impropriety other than through a family physician. If a court allowed individuals in Gianni's position to be subject to retaliatory lawsuits it would have a chilling effect on the willingness of members of the public to tell their doctors of potential misconduct. This would harm the public and the reputation of the medical profession. Thus, even if

4. The Court notes that the DMQA investigation and proceeding were private and did not subject

Fink had a viable claim of vexatious litigation and, thereby, a viable aiding and abetting claim, the Court would dismiss the claim based on Gianni's immunity from suit for reporting Fink's possible lack of fitness to practice medicine.

## CONCLUSION

For the reasons stated above, this Court hereby: GRANTS Gianni's Motion for Summary Judgment (Doc. # 191).

Fink to public scrutiny of his alleged conduct.