BRADLEY W. BEECHER ET AL. *v.* THE MOHEGAN TRIBE OF INDIANS OF CONNECTICUT (SC 17546)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued November 29, 2006—officially released April 24, 2007

*John R. Williams*, for the appellants (plaintiffs).

*Andrew L. Houlding*, with whom was *Glenn E. Coe*, for the appellee (defendant).

*Richard Blumenthal*, attorney general, and *Susan Quinn Cobb* and *Robert J. Deichert*, assistant attorneys general, filed a brief for the office of the attorney general as amicus curiae.

*Meredith G. Diette* and *Mark C. Tilden* filed a brief for the Mashantucket (Western) Pequot Tribe as amicus curiae.

*Opinion*

BORDEN, J. The sole issue in this appeal is whether a federally recognized Indian tribe has waived tribal sovereign immunity against a vexatious litigation claim in state court by having commenced, in state court, the prior action that is the subject of that vexatious litigation claim. The plaintiffs, Bradley W. Beecher, a former employee of the Mohegan Tribal Gaming Commission (gaming commission), and his wife, Katherine

Beecher, appeal[1] from the judgment of the trial court granting the motion to dismiss filed by the defendant, the Mohegan Tribe of Indians of Connecticut.[2] On appeal, the plaintiffs claim that the court improperly concluded that tribal sovereign immunity bars the plaintiffs' state law claim. We disagree and, accordingly, we affirm the judgment of the trial court.

Because in this appeal we review the trial court's ruling on a motion to dismiss, we take the facts to be those alleged in the complaint, construing them in a manner most favorable to the pleader. *Sullins* v. *Rodriguez*, 281 Conn. 128, 132, 913 A.2d 415 (2007). The facts and procedural history are as follows. In October, 2004, the defendant, a federally recognized Indian tribe; see 25 U.S.C. § 1775;[3] brought an action against the plaintiffs in the Superior Court. The defendant claimed that, in an attempt to extort money from the defendant, the plaintiffs had threatened to disclose confidential information obtained during the course of the named plain-

---

[1] The plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] There was some confusion over the proper name of the defendant in the trial court. In their complaint, the plaintiffs had named as the defendant "MTIC, LLC, formerly known as the Mohegan Tribe of Indians of Connecticut." In its motion to dismiss, the defendant stated that the defendant "must be the Mohegan Tribe of Indians of Connecticut, the same entity that brought a prior action against the plaintiffs herein." In its memorandum of decision, the trial court assumed that the nomenclature offered by the defendant was correct, and in oral argument before this court, both parties agreed that the defendant's proper name is the Mohegan Tribe of Indians of Connecticut. We have amended the case name accordingly.

[3] Title 25 of the United States Code, § 1775 (a), provides in relevant part: "(1) The Mohegan Tribe of Indians of Connecticut received recognition by the United States pursuant to the administrative process under part 83 of title 25 of the Code of Federal Regulations.

"(2) The Mohegan Tribe of Indians of Connecticut is the successor in interest to the aboriginal entity known as the Mohegan Indian Tribe.

"(3) The Mohegan Tribe has existed in the geographic area that is currently the State of Connecticut for a long period preceding the colonial period of the history of the United States. . . ."

tiff's employment with the gaming commission. That action concluded with the entry of a stipulated, permanent injunction on December 12, 2004, enjoining the plaintiffs from communicating any confidential information pertaining to the defendant. In May, 2005, the plaintiffs initiated this action, alleging that the defendant's October, 2004 claim was a type of vexatious litigation that has been referred to as a " 'strategic lawsuit against public participation' or SLAPP suit." *Field* v. *Kearns*, 43 Conn. App. 265, 275–76, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996), citing G. Pring & P. Canan, "Strategic Lawsuits Against Public Participation ('SLAPPs'): An Introduction for Bench, Bar and Bystanders," 12 U. Bridgeport L. Rev. 937 (1992).[4] Specifically, the plaintiffs complained that the defendant, in need of regulatory approval in order to purchase various gambling enterprises in Pennsylvania, had brought its 2004 claim to restrain the plaintiffs from making adverse comments to relevant state authorities.

The defendant moved to dismiss the complaint because, absent consent or congressional abrogation, it enjoys sovereign immunity from suit in state court as a federally recognized Indian tribe. In opposition to the defendant's motion to dismiss, the plaintiffs argued that the defendant had waived that immunity by having commenced the prior action against the plaintiffs in state court. The trial court granted the defendant's motion to dismiss, concluding that "[i]n order for waiver to be found as a result of an action brought by a tribe, the waiver of immunity is limited to issues which are

---

[4] According to the Appellate Court, "[t]he distinctive elements of a SLAPP suit are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of 'chilling' any such action." (Citation omitted.) *Field* v. *Kearns*, supra, 43 Conn. App. 276.

necessary to decide the action initially brought by the tribe." This appeal followed.

The plaintiffs claim that the trial court improperly concluded that the defendant did not waive its tribal sovereign immunity in the present action by having brought the prior action, which is the subject of the present case, in state court. Specifically, the plaintiffs contend that the defendant waived its sovereign immunity "with respect to the inevitable consequences of making that claim." The defendant counters that, in bringing the prior action in state court, it consented only to the adjudication of the merits of that action, and not to the adjudication of any subsequent state court claims. We agree with the defendant.

"As a preliminary matter, we set forth the standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Haight*, 279 Conn. 546, 550, 903 A.2d 217 (2006). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 51, 794 A.2d 498 (2002).

Tribal sovereign immunity is governed by federal law. *Kiowa Tribe of Oklahoma* v. *Mfg. Technologies, Inc.*, 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998). " 'Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.' *Santa Clara*

*Pueblo* v. *Martinez*, 436 U.S. 49, 58, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978); *Oklahoma Tax Commission* v. *Citizen Band, Potawatomi Indian Tribe* [*of Oklahoma*], 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991); *United States* v. *United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512, 60 S. Ct. 653, 84 L. Ed. 894 (1940). We begin with the premise that 'Indian tribes are "domestic dependent nations" which exercise inherent sovereign authority over their members and territories.' *Oklahoma Tax Commission* v. *Citizen Band, Potawatomi Indian Tribe* [*of Oklahoma*], supra, 509, citing *Cherokee Nation* v. *Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L. Ed. 25 (1831)." *Kizis* v. *Morse Diesel International, Inc.*, supra, 260 Conn. 52–53. Tribal sovereign immunity is dependent upon neither the location nor the nature of the tribal activities. *Kiowa Tribe of Oklahoma* v. *Mfg. Technologies, Inc.*, supra 523 U.S. 760 (applying tribal sovereign immunity to claim of breach of commercial contract executed off reservation).

An Indian tribe is subject to suit only when Congress has authorized the suit or the tribe has waived its immunity. Id., 754. "However, such waiver may not be implied, but must be expressed unequivocally." (Internal quotation marks omitted.) *Kizis* v. *Morse Diesel International, Inc.*, supra, 260 Conn. 54. "[T]he [United States] Supreme Court has refused to find a waiver of tribal immunity based on policy concerns, perceived inequities arising from the assertion of immunity, or the unique context of a case." *Ute Distribution Corp.* v. *Ute Indian Tribe*, 149 F.3d 1260, 1267 (10th Cir. 1998), citing *Kiowa Tribe of Oklahoma* v. *Mfg. Technologies, Inc.*, supra, 523 U.S. 758. The Supreme Court has stated that there are reasons to doubt the wisdom of tribal sovereign immunity, for example, the fact that it "can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort

victims." *Kiowa Tribe of Oklahoma* v. *Mfg. Technologies, Inc.*, supra, 758. To the extent, however, that "[t]hese considerations might suggest a need to abrogate tribal immunity," courts must defer "to the role Congress may wish to exercise in this important judgment." Id.

Although the initiation of a lawsuit by a tribe may constitute consent, the corresponding waiver of tribal sovereign immunity has been held not to extend beyond the court's adjudication of the merits of that particular controversy. See *Three Affiliated Tribes of the Fort Berthold Reservation* v. *Wold Engineering, P.C.*, 476 U.S. 877, 891, 106 S. Ct. 2305, 90 L. Ed. 2d 881 (1986) (tribes' access to sue in state court may not be conditioned on global waiver); *Schaghticoke Indians of Kent, Connecticut, Inc.* v. *Potter*, 217 Conn. 612, 622 n.9, 587 A.2d 139 (1991) (tribal action in state court insufficient to constitute consent); *McClendon* v. *United States*, 885 F.2d 627, 630 (9th Cir. 1989) (plaintiff tribes consent only to risk of adverse determination). Moreover, tribal sovereign immunity bars even compulsory counterclaims filed against a tribe in an action commenced by the tribe. See *Oklahoma Tax Commission* v. *Citizen Band, Potawatomi Indian Tribe of Oklahoma*, supra, 498 U.S. 509 ("[p]ossessing . . . immunity from direct suit, we are of the opinion [the Indian nations] possess a similar immunity from cross-suits" [internal quotation marks omitted]).

In *Citizen Band, Potawatomi Indian Tribe of Oklahoma*, the tribe brought an action for injunctive relief to foreclose the state's ability to tax cigarette sales on the reservation, and the state filed a counterclaim for back taxes. Id., 507–508. The court concluded that the tribe had not waived its sovereign immunity "merely by filing an action for injunctive relief." Id., 509–10. In so doing, the United States Supreme Court explicitly rejected the argument that trial courts do not need

any independent jurisdictional basis to hear compulsory counterclaims. Id., 509. The court noted that it had rejected the same argument more than one-half century earlier, in *United States* v. *United States Fidelity & Guaranty Co.*, supra, 309 U.S. 506. *Oklahoma Tax Commission* v. *Citizen Band, Potawatomi Indian Tribe of Oklahoma*, supra, 498 U.S. 509. "In that case, a surety bondholder claimed that a federal court had jurisdiction to hear its state-law counterclaim against an Indian [t]ribe because the [t]ribe's initial action to enforce the bond constituted a waiver of sovereign immunity. [The United States Supreme Court] held that a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." Id.

Articulating a narrow exception to the foregoing rule, the United States Supreme Court has held that a defendant in a tribal action may assert counterclaims against the tribe to set off the tribe's claims and limit its recovery. See *United States* v. *United States Fidelity & Guaranty Co.*, supra, 309 U.S. 511–12; *Jicarilla Apache Tribe* v. *Andrus*, 687 F.2d 1324, 1344 (10th Cir. 1982); *Frederick* v. *United States*, 386 F.2d 481, 488 (5th Cir. 1967). This "recoupment-counterclaim exception" is also found in state sovereign immunity jurisprudence. See, e.g., *United States* v. *Forma*, 42 F.3d 759, 764–65 (2d Cir. 1994). In both state and tribal sovereign immunity cases, however, the exception is applicable only when the recoupment counterclaim arises out of the "same transaction or occurrence" as the underlying claim. *Jicarilla Apache Tribe* v. *Andrus*, supra, 1344. Moreover, the United States Court of Appeals for the Tenth Circuit has concluded counterclaims asserting general inequitable or wrongful action by filing and maintaining suit are "*in the nature of a claim for wrongful or malicious prosecution and thus do not arise out of the*

*same transaction or occurrence.*" (Emphasis added.) Id., 1345 n.15. Similarly, we believe that a separate action for vexatious litigation or malicious prosecution, which neither qualifies as a setoff claim nor satisfies the "same transaction or occurrence" test, does not fall within the recoupment-counterclaim exception.

In its prior action, the defendant necessarily consented to the state court adjudication of its affirmative claims, including any special defenses and recoupment counterclaims related thereto. That consent to the adjudication of its affirmative claims did not, however, constitute a blanket waiver of its tribal sovereign immunity in the prior action, let alone in any subsequent action. See *Oklahoma Tax Commission* v. *Citizen Band, Potawatomi Indian Tribe of Oklahoma,* supra, 498 U.S. 509–10. The plaintiffs' present claim, which alleges that the defendant's prior action constituted vexatious litigation, neither falls within any valid exception to nor constitutes a waiver of the broad tribal sovereign immunity federal law affords to Indian tribes. The plaintiffs offer no other grounds upon which to conclude that either the defendant waived or Congress abrogated the defendant's sovereign immunity. Accordingly, we conclude that tribal sovereignty immunity bars the plaintiffs' claim.

The plaintiffs cite *Confederated Tribes of the Colville Reservation Tribal Credit* v. *White,* 139 F.3d 1268, 1272 (9th Cir. 1998), for the proposition that, by commencing its prior action in state court, the defendant had waived its tribal sovereign immunity from any "inevitable consequence" of that action. The plaintiffs contend that the present lawsuit is one such consequence. We are not persuaded.

In *White,* the Indian tribe had initiated a claim against a debtor pursuant to the debtor's reorganization proceeding under chapter 11 of the United States Bank-

ruptcy Code, 11 U.S.C. § 101 et seq. Id., 1270. Thereafter, the debtor successfully converted his bankruptcy to a chapter 7 liquidation. Id. The tribe claimed that the chapter 7 proceeding constituted a separate and distinct proceeding and that its waiver of immunity from the adjudication of its chapter 11 claim did not extend to the chapter 7 conversion. Id. The United States Court of Appeals for the Ninth Circuit disagreed, concluding that the entire bankruptcy proceeding, including its conversion from chapter 11 to chapter 7, constituted one case. Id., 1273. The court further reasoned that the tribe, "[k]nowing that [the debtor] could convert his reorganization into a liquidation at any time . . . nevertheless submitted its claim to the jurisdiction of the bankruptcy court for adjudication. . . . Like any creditor, [the tribe] must abide by the consequences of choosing to assert a claim in [the debtor's bankruptcy] . . . and cannot reclaim immunity just because the case took a turn that was not to its liking." (Citation omitted; internal quotation marks omitted.) Id., 1272. The present claim, however, does not constitute a "turn" in the defendant's prior action, but rather a separate and distinct action, and, thus, it is not an "inevitable consequence" within the meaning of *White*.

The plaintiffs, quoting *Mescalero Apache Tribe* v. *Jones*, 411 U.S. 145, 148–49, 93 S. Ct. 1267, 36 L. Ed. 2d 114 (1973), also argue that " 'Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the [s]tate.' " That case is inapposite, however, because it concerns the actions of individual tribal members, not the tribal sovereign itself. See id. Moreover, we reject the plaintiffs' contention that their vexatious litigation claim is akin to the enforcement of state criminal laws against individual tribal members.

The plaintiffs' reliance on *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 651 A.2d

1246 (1995), for the proposition that the exercise of state court jurisdiction is permitted when it is compatible with the right of tribal Indians to govern themselves under their own laws, is equally misplaced. In that case, we concluded that the trial court had not interfered with the exercise of tribal sovereignty by deciding whether the plaintiff, a tribal leader, had authority to sue on behalf of the tribe. Id., 576. The plaintiffs argue that "there is no tradition of . . . tribal self-government with respect to affirmative litigation in state courts by tribal commercial enterprises against non-tribal citizens," and that the defendant's use of state court "has nothing whatever to do with any recognized basis for a grant of tribal immunity." The issue before us, however, is not whether the trial court had jurisdiction over the defendant's prior action, but rather whether the trial court had jurisdiction over the plaintiffs' present one. We have concluded that it did not.

Finally, we are unpersuaded by the plaintiffs' appeal to "reason and simple fairness . . . ." Neither reason nor fairness permits us to disregard the well established doctrine of tribal sovereign immunity. Though it began as a judicial doctrine, tribal sovereign immunity now rests squarely in Congress' court. *Kiowa Tribe of Oklahoma* v. *Mfg. Technologies, Inc.*, supra, 523 U.S. 758–59. Meanwhile, "[t]he perceived inequity of permitting the [t]ribe to recover from a non-Indian for civil wrongs in instances where a non-Indian allegedly may not recover against the [t]ribe simply must be accepted . . . much in the same way that the perceived inequity of permitting the United States or North Dakota to sue in cases where they could not be sued as defendants because of their sovereign immunity also must be accepted." *Three Affiliated Tribes of the Fort Berthold Reservation* v. *Wold Engineering, P.C.*, supra, 476 U.S. 893.

The judgment is affirmed.

In this opinion the other justices concurred.