MEMORANDUM OF DECISION ON DEFENDANT’S MOTION TO STRIKE
WILSON, J.
The Plaintiff, Administrator of the Estate of Iris E. Soto, brought this action in five counts against the Mohegan Tribal Gaming Authority arising out of events that allegedly resulted in the death of Plaintiffs decedent. The causes of action are based on reckless service of alcohol (Count One), negligent service of alcohol (Count Two), inadequate security (Count Three), inadequate training of Defendant’s employees (Count Four), and statutory liability under Conn. Gen.Stat. Sec. 30-102, the Connecticut Dram Shop Act (Count Five). The instant motion to strike filed by the Defendant is addressed solely to Count Five.
It should be noted that the Plaintiff has elected not to file a memorandum of law in opposition. While § 15(d) of the Mohegan Rules of Civil Procedure would allow the Court to treat the Plaintiffs silence as assent to the granting of the motion, the significance of the issues presented militates against a summary disposition of the issues raised in the motion.
It is well settled that, “for the purpose of a motion to strike, the moving party admits all facts well pleaded.” RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 n. 2, 650 A.2d 153 (1994). “The *171 motion admits all facts that are well pleaded .,. but does not admit legal conclusions or the truth or accuracy of opinions.... On a motion to strike, the trial court’s inquiry is to ascertain whether the allegations in each count, if proven, would state a claim on which relief could be granted. Practice Book § 10-39(a).” In re Michael D, 58 Conn.App. 119, 122, 752 A.2d 1135 (2000).
In the instant case, the relevant allegations of the complaint are that in the afternoon of April 5, 2009, one Christopher Brulotte consumed approximately six alcoholic beverages at the Stonehouse Cafe in Versailles, Connecticut before going to the Mohegan Sun Casino, where he consumed approximately ten more alcoholic beverages between the hours of 7-8:00 p.m. and 11:30 p.m. It is alleged that said Christopher Brulotte was intoxicated during these hours. At approximately 11:50 p.m. Bru-lotte was driving on 1-395 when his Jeep collided with the vehicle operated by Plaintiffs decedent, causing her to suffer multiple blunt traumatic injuries from which she died at the scene. Count Five of Plaintiffs complaint claims damages under the Connecticut Dram Shop Act, Conn. Gen.Stat. § 30-102.
The issue squarely raised by the instant motion is whether the limited waiver of sovereign immunity contained in the Mohegan Torts Code, MTC § 3-250, encompasses the statutory cause of action established by Conn. Gen.Stat. § 30-102. Dram Shop liability, as described by the Connecticut Supreme Court, is a creature of statute that did not exist at common law:
This statute establishes a cause of action that did not exist at common law. Pierce v. Albanese, 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S.Ct. 36, 2 L.Ed.2d 21 (1957). It creates a new tort liability which is based upon a specified course of conduct and the consequences of such conduct. Staples v. Lucas, 142 Conn. 452, 456, 115 A.2d 337 (1955). The delict defined by § 30-102 is not the sale of liquor to create a condition of intoxication. It is rather the sale of liquor to one who is already intoxicated. No causal relation between the sale and the injury is required.
Sanders v. Officers Club of Connecticut, Inc., 196 Conn. 341, 348-49, 493 A.2d 184 (1985).
This issue has been previously decided by the Gaming Disputes Trial Court in Fang v. Mohegan Tribal Gaming Authority, 3 G.D.R. 127, 7 Am. Tribal Law 481 (2008). In Fang, the Plaintiff argued that the definition of “tort” in the version of the Mohegan Torts Code then controlling encompassed the statutory tort created by Conn. Gen.Stat. § 30-102. In rejecting this position, the Gaming Disputes Court, per Eagan, J., held that the general waiver language of MTC § 3-250 did not satisfy the standard that a waiver of the sovereign immunity of the Mohegan Tribe must be unequivocally expressed and cannot be implied: [1] See Long v. Mohegan Tribal Gam *172 ing Authority, 1 G.D.R. 5, 1 Am. Tribal Law 380, 385 (1997): “[a]bsent a clear waiver [of immunity] by the tribe or congressional abrogation”, Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), it is clear that Indian tribes possess the “common law immunity from suit traditionally enjoyed by sovereign powers.” 1 G.D.R. 5, 9 (1997). Moreover, the Gaming Disputes Trial Court noted that the Dram Shop Act “does not, by its express terms, apply to the Sovereign State of Connecticut or its instrumentalities.” 3 G.D.R. 127[2].
Although not specifically discussed by the Trial Court in Fang, its decision is in accord with the holding of the Gaming Disputes Court of Appeals in MacLean v. Office of the Director of Regulation, 1 G.D.A.P. 20 (2004). In MacLean, the Trial Court had relied on the similarity between provisions of the License Appeal Ordinance, then MTO 2002-13, and Conn. Gen. Stat. § 4-183(g), together with dicta from the Connecticut Supreme Court[3] that the latter may allow for reinstatement of a State agency worker with back pay, and had ordered an award of the same to an employee of the Mohegan Tribal Gaming Authority who had successfully appealed his license suspension. In reversing and holding the award of back pay went beyond the waiver of sovereign immunity in MTO 2002-13 §§ 2 and 3(j-k), the Court of Appeals emphasized that the sovereign immunity of the Mohegan Tribe may not be waived by the State of Connecticut:
We hold that the applicable tribal law of the Mohegan Tribe recognizes and preserves the sovereign immunity of the Tribe, and that a waiver of sovereign immunity by the State of Connecticut may not be incorporated into the substantive law of the Mohegan Tribe pursuant to MTO 95-4 Section 300 et seq.
MacLean, supra at 22. As the United States Supreme Court has stated, “tribal immunity is a matter of federal law and is not subject to diminution by the States.” Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 756, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); *173 accord: Beecher v. Mohegan Tribe of Indians of Connecticut, 282 Conn. 130, 134-35, 918 A.2d 880 (2007).
Although irrelevant to the Fang decision, the amendment to the Mohegan Torts Code effective April 18, 2007 is applicable to the instant case, and in any event is consistent with the foregoing principle that tribal sovereign immunity is not subject to State diminution:
Nothing herein shall be construed as a waiver of either the Mohegan Tribe or the Mohegan Tribal Gaming Authority of its sovereign immunity as to claims arising under any Connecticut General Statute or arising under Connecticut common law.
MTC § B—250(f).[4]
The Defendant’s Motion to Strike is granted.

. In the respect, it should be noted that the Mashantucket Pequot Indian Nation has expressly waived its sovereign immunity for dram shop claims:
§ 40. Liquor Seller Liable for Damage by Intoxicated Person
a. If any person, by himself or his agent, sells any Alcoholic Liquor to an intoxicated person on the Reservation, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another whether within or without the Reservation, such seller shall pay damages to the person or persons injured, up to the aggregate amount of $250,000, to be recovered in an action under this Section, provided the aggrieved person or persons shall give written notice to such seller within 60 *172 days of the occurrence of such injury to person or property of his or their intention to bring an action under this Section.... The damages recovered under this section up to the limit provided herein shall be calculated in the same manner as damages are calculated under 4 M.P.T.L. Ch. 1 (Tort Claims) as the same may be amended from time to time. Such injured person shall have no cause of action against Seller for negligent sale of alcoholic beverages.

. By its terms, Conn. Gen.Stat. § 30-102 applies to "any person, by such person or such person’s agent [who] sells intoxicating liquor to an intoxicated person”. Apparently commencing with Rosenthal v. Dunphy, Et Al., 18 Conn.Supp. 271, 1953 WL 651 (1953), the term "person”, has been held to apply to other entities, such as corporations. See, e.g., Ruitto v. the Village Green Pub, Et Al., 1990 WL 284002 (Conn.Super.X1990). The statute contains no mention whatsoever as to any waiver of the sovereign immunity of the State of Connecticut or any other entity so vested. Viewed in light of the Connecticut Supreme Court’s holding in Envirotest Systems Corp. v. Commissioner of Motor Vehicles, 293 Conn. 382, 978 A.2d 49,(2009) that even under the more relaxed standard of waiver of sovereign immunity "by force of necessary implication” the grant to the Commissioner of Motor Vehicles of authority to negotiate the terms of inspection agreements containing arbitration provisions did not carry with it a waiver of the State's sovereign immunity so as to allow judicial enforcement these arbitration provisions, it is inconceivable that the Connecticut Supreme Court would find such a waiver in Conn. Gen.Stat. § 30-102.

. McDermott v. Commissioner of Children and Youth Services, 168 Conn. 435, n. 7, 363 A.2d 103(1975).

. This principle extends to the provisions of The Mohegan Tribe—State of Connecticut Gaming Compact, which is quite specific in its declaration that no part of the Compact shall be deemed a waiver of the Tribe's sovereign immunity:
(g) Tort remedies for patrons. The Tribe shall establish prior to the commencement of class III gaming, reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities. The Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Compact, but may adopt a remedial system analogous to that available for similar claims arising against the State or such other remedial system as may be appropriate following consultation with the State gaming agency.