******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# BENJAMIN ANCONA, JR., ET AL. *v.* FAUNA J. ELLER ET AL.
## (AC 48197)

Cradle, C. J., and Elgo and Westbrook, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment granting the special motion to dismiss filed by the defendant E and dismissing their complaint as against E pursuant to the anti-SLAPP statute (§ 52-196a). The plaintiffs claimed, inter alia, that the court improperly concluded that the counts of the complaint directed against E, a former town official, were subject to dismissal pursuant to § 52-196a. *Held*:

This court declined to review the plaintiffs' claim that, because of E's status as a town official at the time she made allegedly defamatory statements, she was not entitled to the protections afforded under § 52-196a, as the plaintiffs failed to raise that claim in the trial court before filing their appeal and, thus, it was not properly preserved with respect to the judgment on appeal.

The plaintiffs' claim that E's statements were not communicated in a public forum and, thus, did not meet the initial threshold of § 52-196a was unavailing, as the basis of the trial court's ruling was that the plaintiffs' complaint improperly targeted E's right to petition the government, and the public forum issue had no discernable bearing on the judgment.

Argued December 10, 2025—officially released June 30, 2026

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Hon. Joseph M. Shortall*, judge trial referee, granted the special motion to dismiss filed by the defendant Stephen Clark; thereafter, the court, *Hon. Joseph M. Shortall*, judge trial referee, granted the named defendant's special motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed*.

*Anthony J. Palermino*, for the appellants (plaintiffs).

*Kimberly A. Bosse*, with whom, on the brief, was *Dennis M. Durao*, for the appellees (named defendant et al.).

*Opinion*

WESTBROOK, J. The plaintiffs, Benjamin Ancona, Jr., Jennifer Ancona, Maria Pane, Beth DelBuono, Scott DelBuono, Domenic Pane, and Michael Camillo,[1] appeal from the judgment of the trial court granting the special motion to dismiss filed by the defendant Fauna J. Eller, a former town of Newington (town) tax assessor,[2] pursuant to General Statutes § 52-196a, the state's anti-SLAPP statute.[3] The plaintiffs claim that, in granting Eller's special motion to dismiss, the court improperly concluded that the counts of the complaint directed against her, which sounded in defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, as well as violations of the town's code of ethics, were subject to dismissal in accordance with § 52-196a.[4] Specifically, the plaintiffs claim, inter alia, that **(1)** Eller, as a public official, was not entitled

[1] Benjamin Ancona, Jr., is a former town attorney for the town of Newington (town). His wife, Jennifer Ancona, and Maria Pane, are both former members of the town's board of assessment appeals. Beth DelBuono is the former mayor of the town, and her husband, Scott DelBuono, at all relevant times was an official with the Federal Bureau of Investigation. Domenic Pane is the former chairman of the town's Planning and Zoning Board and is the husband of Maria Pane. Michael Camillo is a former town councilor. In this opinion, we refer to these parties individually by name and collectively as the plaintiffs.

[2] In addition to Eller, the complaint in the underlying action also named as defendants Stephen Clark, the town's former chief of police; Stuart Topliff, the town assessor for the town of Rocky Hill; and the town. On September 5, 2024, the court granted a special motion to dismiss filed by Clark, and the propriety of that judgment is not at issue in this appeal. Moreover, Topliff has not participated in this appeal.

[3] "SLAPP is an acronym for strategic lawsuit against public participation . . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.      , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

[4] The court also dismissed those counts of the complaint brought against the defendant town sounding in indemnification and respondeat superior because those counts were wholly derivative of the counts brought against Eller and thus must rise and fall with them. See *Doe 1* v. *Board of Education*, 213 Conn. App. 22, 56–57, 277 A.3d 164 (2022); *Lamar* v. *Brevetti*, 173 Conn. App. 284, 291, 163 A.3d 627 (2017).

to invoke § 52-196a and (2) her allegedly defamatory statements were not made in a public forum and, therefore, did "not meet the initial threshold of § 52-196a."[5] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as set forth by the court on the basis of the pleadings and affidavits of the parties; see General Statutes § 52-196a (e) (2); and procedural history are relevant to our discussion of the plaintiffs' claims. Eller sent an email on August 25, 2023, to Benjamin Ancona, Jr.; Janet Murphy, the town's finance director and Eller's supervisor; and the town's labor attorney. In that email, she accused various town officials of misconduct. Specifically, the email accused Benjamin Ancona, Jr., of being "unethical, abrasive, [and] bullying, and

[5]The plaintiffs have raised other claims in their principal appellate brief that we summarily reject either because they lack merit or the plaintiffs' briefing is so confusing and disorganized that it is not possible to engage in any meaningful review of the claims. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must *clearly and fully* set forth their arguments in their briefs." (Emphasis added; internal quotation marks omitted.) *State* v. *Godbout*, 229 Conn. App. 231, 235–36, 326 A.3d 1142 (2024). "In considering the adequacy of briefing, it is proper for this court to consider, among other factors, (1) whether the claim is stated clearly and succinctly such that its contours can be understood by the court and the opposing party, (2) the relative sparsity of any analysis, meaning how much of the brief is dedicated to the claim, (3) whether the analysis is confusing, repetitive [or] disorganized, and (4) whether the appellant has cited, analyzed and applied relevant legal authority." (Internal quotation marks omitted.) *S. A.* v. *D. G.*, 198 Conn. App. 170, 192, 232 A.3d 1110 (2020); see id., 194 (declining to decipher claims involving complicated issues related to first amendment jurisprudence because brief was "muddled, unfocused, and [failed] to place arguments into any readily discernable legal parameters"); see also *C. B.* v. *S. B.*, 211 Conn. App. 628, 631, 273 A.3d 271 (2022) (declining to review claims because briefing was conclusory, confusing, and disorganized).

[of having biasedly] advocated for certain tax payers," having failed to "[remove] himself in situations where he has a conflict of interest," and of "seem[ing] to not care about what is best for the [town], but rather what is best for a certain few people who live or own businesses/real estate in the [town]." (Internal quotation marks omitted.) The email also alleged that Murphy had had multiple conversations and meetings with Mayor Beth DelBuono during which they discussed "that [Benjamin] Ancona [was] not representing the best interests of the town, and even worse [was] advocating for the taxpayers, not his client the [town]." (Internal quotation marks omitted.)

Eller's email also stated that, following a March 2023 session of the Board of Assessment Appeals, Maria Pane and Jennifer Ancona "heavily pressured [Eller's] office to allow them to reopen the session to change decisions made . . . [and] to change paperwork that contained decision results . . . ." (Internal quotation marks omitted.) According to Eller, they also attempted to have her terminated from her position as a town tax assessor for pointing out their misconduct. Eller stated that Maria Pane had attempted to use her position to change assessments on property owned by Dominic Pane, who was chairman of the town planning and zoning board, and "for doing reductions for Richard Hayes, a fellow republican [and] donor to the [Newington Republican Town Committee ]." The email also alleged that Jennifer Ancona had attempted to use her position to provide tax reductions for Hayes, who allegedly donated to her husband's campaign for probate judge. The email further accused both Maria Pane and Jennifer Ancona of failing to recuse themselves from Hayes' assessment appeals.

Eller additionally asserted in her email that she had "been asked by officials of the town to ignore state statute and [her] training," and that, when she was "unwilling to cooperate in behavior that would compromise [her] integrity, [she was] the victim of bullying, hostility, and defamation of [her] character . . . ." Finally, Eller stated that the following individuals had "created a hostile work

environment and [made her] fearful in the workspace, by their offensive behavior, intimidation and verbal abuse": Dominic Pane, Maria Pane, Benjamin Ancona, Jr., Jennifer Ancona, Beth DelBuono, Scott DelBuono, Michael Camillo, and Thomas Hutka, the town manager.

In October 2023, Eller filed an ethics complaint with the town's Board of Ethics, in which she restated the allegations she made in her August 25, 2023 email. She added that "[Benjamin Ancona, Jr.] has stated on multiple occasions that he is for the taxpayer in the appeals, not the [town]," Benjamin Ancona, Jr., "has no interest in defending the town in tax appeals and just wants to settle them with no regard for preserving the tax base for the [town]," and, "despite repeated requests for discovery . . . [Benjamin Ancona, Jr.] will not issue discovery as requested by his client . . . the [town]." The ethics complaint further elaborated on previous allegations that Benjamin Ancona, Jr., was the subject of improper political influence by accusing him of receiving political donations toward his probate judge campaign from donors who reside outside of the town and of specifically advancing the interests of one political donor, Hayes. The ethics complaint also suggested that Jennifer Ancona engaged in misconduct similar to Benjamin Ancona, Jr., by using her official position to encourage the Board of Assessment Appeals to reduce the values of properties held by Hayes. Lastly, Eller's ethics complaint alleged that Benjamin Ancona, Jr., has several conflicts of interest arising from his private law practice and political affiliations and that he violated the town's ethics code by failing to recuse himself from matters that implicated his personal interests.

Pursuant to the Board of Ethics' governing ordinances, the board initiated an investigation into Eller's allegations on October 24, 2023. See Newington Code of Ordinances § 32-11 (G). The board held a meeting on March 5, 2024, at which Eller presented her case against the plaintiffs with the assistance of counsel. At the conclusion of the meeting, the board dismissed Eller's ethics

complaint with respect to Benjamin Ancona, Jr., due to a lack of evidence of wrongdoing. Subsequently, on May 28, 2024, the board voted unanimously to dismiss the ethics complaint as to Maria Pane and Jennifer Ancona for lack of probable cause.

After the dismissal of her ethics complaint against Benjamin Ancona, Jr., on April 7, 2024, Eller filed a grievance complaint against Benjamin Ancona, Jr., with the Statewide Grievance Committee. In her grievance complaint, Eller reiterated the allegations that she made in her complaint to the town's Board of Ethics. A grievance panel considered the matter at a meeting held on September 27, 2024, "at which time it carefully reviewed the information submitted and determined that the record supported a finding of no probable cause that [Benjamin Ancona, Jr.] had violated the Rules of Professional Conduct." The grievance panel thereafter issued a written decision dismissing the grievance complaint.

The plaintiffs commenced the action underlying the present appeal in May 2024.[6] The plaintiffs filed the operative twenty-eight count amended complaint on July 15, 2024. On July 18, 2024, Eller filed a special motion to dismiss pursuant to §52-196a, asserting that all but one of the counts against her should be dismissed because the plaintiffs' claims were based on her exercise of her constitutional rights.[7] Eller also sought an award of reasonable attorney's fees pursuant to §52-196a (f)

---

[6] "[U]nder the law of our state, an action is commenced not when the writ is returned but when it is served [on] the defendant." (Internal quotation marks omitted.) *Harvey* v. *Dept. of Correction*, 337 Conn. 291, 303, 253 A.3d 931 (2020). It is not clear from the underlying record on what date service of process was made on the defendants in this matter.

[7] Counts one, eight, thirteen, eighteen, twenty-one, twenty-four, and twenty-six were brought by the seven plaintiffs individually against Eller and alleged defamation based on statements she made about the plaintiffs in the August 25, 2023 email, the ethics complaint, and the grievance complaint. Counts two and three were brought by Benjamin Ancona, Jr., against Eller and asserted that her actions violated the town's code of ethics. Counts nine and fourteen were brought by Maria Pane and Jennifer Ancona, respectively, and allege intentional infliction of emotional distress by Eller. Counts ten and fifteen were brought

(1). Eller asserted in the alternative that the plaintiffs' complaint should be dismissed on the basis of the qualified fair comment privilege and/or litigation privilege.

On August 1, 2024, the plaintiffs filed an objection to the motion to dismiss accompanied by a memorandum of law in which they argued that Eller's statements were lies and, thus, not constitutionally protected; the statements against Benjamin Ancona, Jr., were per se libelous and made with actual malice; Eller's statements regarding Scott DelBuono were directed at a nonpublic figure; and both state and local tribunals already had determined that Eller's statements were unsubstantiated.

In addition to the objection to the special motion to dismiss, Benjamin Ancona, Jr., filed an affidavit dated August 1, 2024, in which he averred that Eller had "commissioned [Stephen] Clark to repeat her defamatory statements in the [nonpublic] forum of the October 26, 2023 Newington Democrat Town Committee meeting that was held in the basement of the Church of Christ" and that Eller "admitted in the ethics hearings that she had absolutely no evidence to support the defamatory claims she made in her [h]ostile [w]ork [e]nvironment [c]omplaint." The latter factual allegation was also reiterated in affidavits filed by Jennifer Ancona and Maria Pane. Beth DelBuono also filed an affidavit, dated August 14, 2024, in which she averred that Eller had attempted to extort her by threatening to file complaints against Benjamin Ancona, Jr., during his tenure as town attorney unless she fired him.

On October 30, 2024, following a hearing, the trial court issued a memorandum of decision ruling in favor of Eller on her special motion to dismiss. The court reasoned in relevant part that Eller failed to show that the complaint arose from her right to exercise free speech,

by Maria Pane and Jennifer Ancona respectively and allege negligent infliction of emotional distress by Eller.

Count twenty-seven of the complaint, which Eller did not seek to dismiss, was brought against her by Scott DelBuono and alleged that Eller had discriminated against him on the basis of a disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

partially because the various forums in which Eller's speech was implicated were not forums in which her speech was publicly accessible. Nevertheless, the court concluded that, consistent with the anti-SLAPP statute, Eller had demonstrated by a preponderance of the evidence that the plaintiffs' complaint arose from her exercising her right to petition the government on a matter of public concern and that the plaintiffs had failed to demonstrate that there was probable cause to believe that they would prevail on the merits of the relevant portions of their complaint. The plaintiffs filed the present appeal on November 18, 2024.

Subsequently, on January 23, 2025, the plaintiffs filed a motion to reargue and for reconsideration of the court's October 30, 2024 decision in which they argued that they had omitted "controlling law" from their previous arguments, namely, that Eller was not entitled to the protections of Connecticut's anti-SLAPP statute "because she was not a 'nongovernment individual' as required to bring" a special motion to dismiss pursuant to § 52-196a. Eller objected to the plaintiffs' motion on the grounds that it was untimely and otherwise failed to comply with our rules of practice, the plaintiffs had failed to raise their arguments in their initial objection to the motion to dismiss, and the "nongovernment individual" language cited by the plaintiffs was not codified into the anti-SLAPP statute and, thus, did not bar Eller's reliance on the statute. On February 3, 2025, the court issued an order denying the plaintiffs' motion to the extent it sought reargument. The court granted the motion to the extent that it requested reconsideration and stated that, "[h]aving reconsidered its decision in light of the arguments made in this motion and in [Eller's] objection (#145), the court declines to depart from its original ruling." The plaintiffs did not amend the present appeal to challenge the court's ruling on their motion to reargue and for reconsideration. See Practice Book § 61-9.[8]

---

[8] Practice Book § 61-9 provides in relevant part: "If the trial court issues an additional decision after an appeal has been filed that the appellant wants to appeal, the appellant shall file an amended appeal within twenty days from the issuance of notice of the decision as provided for in Section 63-1. . . ."

Before turning to the plaintiffs' claims, we set forth the following legal principles and standard of review. "Appellate review of a court's decision on a special motion to dismiss is identical to that of the trial court, as it entails consideration of the pleadings and affidavits submitted by the parties; see General Statutes § 52-196a (e) (2); and involves no factual findings or credibility determinations. Accordingly, our review is de novo." *Aguilar* v. *Eick*, 234 Conn. App. 281, 321–22, 344 A.3d 263, cert. granted on other grounds, 353 Conn 925, 345 A.3d 811 (2025). In conducting that review, we consider the pleadings, affidavits, and other submitted materials in the light most favorable to the plaintiffs. Id., 284–85. Under § 52-196a, "a party may file a special motion to dismiss when the opposing party's complaint is based on the moving party's exercise of, among other things, the right of free speech or the right to petition the government in connection with a matter of public concern." *Priore* v. *Haig*, 344 Conn. 636, 659, 280 A.3d 402 (2022). Pursuant to § 52-196a (e) (3), the moving party bears the initial burden of demonstrating, by a preponderance of the evidence, that the complaint "is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the [c]onstitution of the United States or the [c]onstitution of the state in connection with a matter of public concern . . . ." If that burden is met, the burden shifts to the nonmoving party to establish "that there is probable cause, considering all valid defenses, that the [nonmoving] party will prevail on the merits of the complaint . . . ." General Statutes § 52-196a (e) (3).

I

The plaintiffs first claim that the trial court improperly granted Eller's special motion to dismiss because the protections afforded under § 52-196a are not available to her. Specifically, they argue that, at the time of her allegedly defamatory statements, Eller was a town official, and § 52-196a only applies in actions brought against a nongovernment individual. Eller responds

that the plaintiffs' claim was not properly preserved for appellate review because it was not raised in the plaintiffs' objection to the special motion to dismiss but for the first time in the plaintiffs' postappeal motion for reargument and/or reconsideration. We agree with Eller that this claim is not properly before us.

It is axiomatic that claims of error regarding the judgment on appeal ordinarily will not be considered if they were never raised to and acted on by the trial court. See *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, 145 Conn. App. 696, 714, 77 A.3d 165 (2013), aff'd, 315 Conn. 596, 109 A.3d 473 (2015). The plaintiffs' appeal was filed on November 18, 2024, and was taken from the court's ruling on Eller's special motion to dismiss. Nowhere in their written opposition to that motion or during oral argument did the plaintiffs assert to the trial court the claim they now raise on appeal regarding Eller's status as a government official. Accordingly, that claim was not properly preserved with respect to the judgment on appeal. The plaintiffs concede as much in their reply brief in which they acknowledge that they raised the issue, not prior to the court deciding the special motion to dismiss, but in their motion for reconsideration, which was filed on January 23, 2025, *after* they filed the present appeal.

It is also well settled that motions for reargument and reconsideration cannot properly be utilized to have a "second bite of the apple," and raising an issue for the first time in a motion to reargue, whether pre- or postappeal, will not ensure appellate review of the merits of that issue. (Internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 634, 99 A.3d 1079 (2014). Moreover, in the present case, after the trial court denied the motion for reconsideration, the plaintiffs did not appeal or amend the present appeal to include a challenge to the denial of their motion for reconsideration. As previously noted, Practice Book § 61-9 provides in relevant part: "If the trial court issues an additional decision after an appeal has been filed that the appellant wants to appeal, the appellant shall file an

amended appeal within twenty days from the issuance of notice of the decision as provided for in [Practice Book §] 63-1. . . ." The plaintiffs' failure to appeal from the denial of their motion for reconsideration renders any and all possible claims of error regarding the motion for reargument and reconsideration unreviewable because that ruling is not properly before us. See *J. C.-S.* v. *J. G.*, 230 Conn. App. 651, 653 n.2, 331 A.3d 175 (declining to review claim related to postappeal ruling because appellant failed to amend appeal), cert. denied, 351 Conn. 924, 333 A.3d 795 (2025); *R. H.* v. *M. H.*, 219 Conn. App. 716, 751, 296 A.3d 243 (2023) (same), rev'd in part on other grounds, 350 Conn. 432, 324 A.3d 720 (2024); *Worth* v. *Commissioner of Transportation*, 135 Conn. App. 506, 508 n.2, 43 A.3d 199 (same), cert. denied, 305 Conn. 919, 47 A.3d 389 (2012). In short, the plaintiffs' claim that Eller was not entitled to the protections afforded under § 52-196a is not properly before us.[9]

## II

The plaintiffs also claim that Eller's statements were not communicated in a public forum and, therefore,

---

[9] In support of their position that our anti-SLAPP statute only applies to suits brought against a "nongovernment individual," the plaintiffs rely on the following language found in a number of appellate decisions: "SLAPP is an acronym for strategic lawsuit against public participation, the distinctive elements of [which] are (1) a civil complaint (2) filed against *a nongovernment individual* (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern." (Emphasis added; internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.      , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021); see also, e.g., *Priore* v. *Haig*, supra, 344 Conn. 658 n.6; *Beecher* v. *Mohegan Tribe of Indians of Connecticut*, 282 Conn. 130, 133 n.4, 918 A.2d 880 (2007).

Although we do not decide the issue today, we note that the quoted language from *Lafferty* and its reference to "nongovernment individual" originates in an opinion of this court, *Field* v. *Kearns*, 43 Conn. App. 265, 276, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996), which predated our legislature's enactment of our anti-SLAPP statute in 2018. The court in *Field* borrowed this language from a law review article discussing SLAPP suits in general. See G. Pring & P. Canan, "Strategic Lawsuits Against Public Participation ('SLAPPs'): An Introduction for Bench, Bar and Bystanders," 12 U. Bridgeport L.

did "not meet the initial threshold of § 52-196a." Eller responds that, because the basis of the trial court's ruling was that the plaintiffs' complaint improperly targeted her right to petition the government, it is not relevant to this court's review of the trial court's decision of whether her statements were made in a public forum.[10] We agree with Eller.

The plaintiffs' claim, which implicates whether Eller's alleged conduct falls within the ambit of the anti-SLAPP

Rev. 937, 946–47 (1992). The issue before the court in *Field* was not what constitutes a SLAPP suit in this jurisdiction or its elements. The court expressly stated that "we do not decide today whether the plaintiff's actions constituted a SLAPP suit," and its reference to the "distinctive elements" of a SLAPP suit was merely dicta intended to define "SLAPP" as that term had begun to develop across the country. See *Field* v. *Kearns*, supra, 276. The origins of the term "nongovernment individual" is not discussed further in the law review article, by the court in *Fields*, or by any of the courts that have repeated *Field*'s language in an effort to define the term "SLAPP" or "anti-SLAPP." Moreover, although our appellate courts have repeated the aforementioned language, we have not done so in the context of deciding whether a town or state official qualifies as an opposing party under our anti-SLAPP statute. At least one Superior Court explicitly has rejected the argument that § 52-196a does not protect government officials. See *Mayer* v. *Fairfield*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-23-6059821-S (January 2, 2025). As the court in *Mayer* also noted, a number of Superior Courts have applied § 52-196a to protect governmental officials. See, e.g., *Servidio Landscaping, LLC* v. *Stamford*, Superior Court, judicial district of Fairfield, Docket No. CV-21-6105054 (September 9, 2022); *Graves* v. *Chronicle Printing Co.*, Superior Court, judicial district of Tolland, Docket No. CV-18-5010056-S (November 7, 2018) (67 Conn. L. Rptr. 442).

The relevant statutory language authorizing the filing of a special motion to dismiss; see General Statutes § 52-196a (b); does not expressly exclude governmental officials from its protections. Rather, the statute is broadly written and provides that, in any action based upon a party's having exercised one of the rights enumerated in the statute in connection with a matter of public concern, the "opposing party," meaning the party against whom the action is brought, is authorized to file a special motion to dismiss. The statute contains no express provision that limits the statute's applicability if the "opposing party" happens to be someone who exercised his or her rights while also holding a government office.

[10]The trial court stated in its decision that "the forums in which [Eller] made her comments about the plaintiffs do not appear to qualify as public forums" and, thus, "it is doubtful that the court could find that the complaint is based on [Eller's] exercise of her right of free speech,

statute, raises a question of law over which we exercise plenary review. See *Robinson* v. *V. D.*, 229 Conn. App. 316, 338, 328 A.3d 198 (2024). Section 52-196a (a) (2) defines "right of free speech" to mean "communicating, or conduct furthering communication, *in a public forum* on a matter of public concern . . . ." (Emphasis added.) Contrastingly, § 52-196a (a) (3) (A) defines the "right to petition the government" as a "communication in connection with an issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body . . . ." Thus, unlike with the right of free speech, there is no express requirement in § 52-196a that statements be communicated in a public forum in order to implicate one's right to petition the government. The plaintiffs have not analyzed or provided any legal authority suggesting that Eller needed to show that her offending statements were made in a public forum to establish that the complaint was based on her exercise of her right to petition the government. Our Supreme Court has suggested that, because the "public forum" language only appears in the definition of the right of free speech, it does not have applicability regarding the other enumerated rights protected by our anti-SLAPP statute. See, e.*g*., *Smith* v. *Supple*, 346 Conn. 928, 964 n.32, 293 A.3d 851 (2023) ("because the definition of 'right of free speech' requires use of a 'public forum,' when the statutory definition of the 'right of association' does not, the fact that [the forum where activity occurred was] a private institution has no bearing on the analysis of the latter right under the first step of § 52-196a (e) (3)"). Because the public forum issue has no discernable bearing on the judgment before us, we reject the plaintiffs' claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[but] that doubt is of no moment inasmuch as the court finds that it is her right to petition the government that is targeted by the plaintiffs."